## STATE, EX REL. INHABITANTS OF THE CITY OF PLAIN-FIELD, v. NELSON RUNYON, CITY JUDGE, &c.

1. The city judge in Plainfield has power to issue warrants for the collection of taxes in arrears, but only when a list of the delinquent taxpayers has been duly returned to him by the proper officer.
2. *Mandamus* will not be granted unless the case shows that a manifest duty has been neglected.

The rule in this case required Nelson Runyon, the city judge of Plainfield, to show cause why a *mandamus* should not be allowed, commanding him to issue warrants for the collection of taxes in arrears in that city for the years 1875 to 1879, inclusive. From the affidavit and agreements on

City of Plainfield v. Runyon.

which the rule was argued, the following facts appear: Defendant became city judge on the first Monday in January, 1880. His predecessor in the office was Peter P. Good, who held the office during all the years in which the taxes in question were assessed. The collector of taxes of the city had regularly returned lists of the delinquent tax-payers on the first Monday in September, in every year, to the then city judge, who had issued warrants for the collection of the taxes in arrear in each year, except 1879. The lists had been turned over to defendant, with the books and papers of the office. The list of the delinquent tax-payers for the year 1879 was also returned to defendant on March 1st, 1880. The city council, on April 5th, 1880, passed resolutions requiring the defendant, as city judge, to issue "his warrant for the collection of all taxes in arrears." Defendant declined and refused to issue such warrant, although the resolutions were brought to his notice.

Argued at June Term, 1880, before Justices SCUDDER and MAGIE.

For the relators, *Suydam & Jackson.*

*N. Runyon, in pro. pers.*

The opinion of the court was delivered by

MAGIE, J. Upon the facts presented, the city of Plainfield insists that this court ought, by *mandamus,* to compel defendant to issue a warrant for the collection of taxes in arrears in that city for certain years. Defendant, in reply, insists that no power has been conferred on him to issue such warrants, and therefore he was under no duty to do so, and that if he is in error in respect to his powers and duties, yet, upon the facts now shown, there appears no omission of duty such as will justify a *mandamus.*

The first question therefore presented is, whether any power has been conferred on the city judge in Plainfield to issue warrants for the collection of taxes in arrears.

The charter of the city in force during the time in question will be found on page 1134 of the Laws of 1872. Among the officers of the city required to be elected by the citizens was a "city judge." He was given the same powers in criminal cases which a justice of the peace then had, and also power to hear and decide "suits for the enforcement or violation of ordinances" of the city. By a supplement approved April 1st, 1873, he was also empowered to try all civil actions cognizable before justices of the peace.

By the provisions of the charter, moneys ordered to be raised by tax were to be assessed and collected in the same manner as assessors and collectors of townships were by law required to assess and collect state and county tax. The thirty-fourth section of the act further provided—"And in case of the non-payment of taxes, the said collector shall return, on the 1st day of December, annually, the names of all delinquents, with the sums due from them respectively, and to such city magistrate as the said common council shall by ordinance or resolution direct; and the said magistrate shall thereupon issue his warrant or warrants to the city policemen, or any of them, or such other person as the common council shall for that purpose nominate and appoint, requiring him or them to levy the tax so in arrears, in the manner prescribed by the laws of the State of New Jersey relative to the collection of taxes in townships."

Defendant insists that the "city magistrate" referred to in this section is one of the justices of the peace, whose election is provided for by the act, or the mayor, to whom some magisterial power is given. While, doubtless, these officers might have been selected, we have no doubt the city judge was also capable of being selected. He was required to exercise judicial functions within the city, and so was a magistrate—"an inferior judicial officer"—of the city. *Bouv. Law Dict., tit. "Magistrate."* But all doubt on this subject is ended by the provisions of the supplement of 1873, above referred to. The collector was by that supplement required, annually, on the first Monday of September, to make his return of

delinquent tax-payers to the city judge. Under this provision, it is clear the city judge was intended to be the magistrate to issue warrants for the collection of taxes, and it may be questioned whether, after the passage of that supplement, any other magistrate could do so.

The next question to be considered is, what warrants can the city judge issue? While the act, in prescribing the means of enforcing the payment of taxes, is deplorably meagre, yet there is sufficient in the language of the thirty-fourth section to clearly indicate the intention of the legislature. The words, "in the manner prescribed by the laws of the State of New Jersey relative to the collection of taxes in townships," where they occur in that section, relate as well to the issuing of the warrants as to the mode of levying the tax thereunder. The magistrate, after a return is made to him, is thereby empowered to issue precisely such warrants as, under similar circumstances, the law then permitted to be issued in the collection of taxes in townships. His authority would thus include the issuing of such warrants as, under the general tax law, were issued by justices of the peace, enforcing the payment of taxes by distress of goods and chattels, and at that time, by seizure and imprisonment of the delinquent tax-payer, and also such warrants as were issued by the township committee for the sale of real estate for taxes, under the act making taxes a lien on real estate. It would also extend to the case of *alias* and *pluries* warrants, such as were authorized by the provisions of the acts approved April 1st, 1868, and March 24th, 1869, and now forming Sections 97 and 98 of the title "Taxes," (*Rev., p.* 1161,) so far as such warrants could be issued by the magistrate referred to in the thirty-fourth section of the Plainfield charter.

But the magistrate referred to in that section is that one to whom the collector has made a return. There is no provision embracing his successor in office, or any person holding a similar office. Whatever may be our views of the probable intention of the legislature to entirely assimilate the proceed-

ings for the collection of taxes in the city to those prescribed for townships, yet it will not do to extend the act beyond its plain language. That language—and it is all that gives authority to issue warrants—is plainly limited to the magistrate to whom the collector has made his return.

Under these circumstances, are the relators entitled to the writ they seek? With respect to all the taxes in question prior to 1879, it is plain, upon the conclusions above arrived at, that defendant has no power to issue warrants. No returns have been made to him. The lists returned to his predecessor, and on which warrants were issued by him, have indeed come to defendant's hands, but they have never been returned to him. He has no means of ascertaining what payments have been made thereon. There being no authority given, there was no duty imposed on defendant to issue such warrants.

The list of delinquents for 1879 appears to have been at first returned to Judge Good, who issued no warrant thereon. It seems also to have been returned to defendant, on March 1st, 1880. By whom the last return was made, does not clearly appear from the affidavits. If we infer it was made by the collector of taxes in the year the tax was assessed, the return was after the expiration of his term of office. There seems to be no provision for a return after the collector's term of office has expired. Such an objection was considered, and found insuperable in *State* v. *Lewis, Collector,* 6 *Vroom* 377, 380. Nor does the charter provide for the return being made by the successor in office of the collector.

If, however, the list of the delinquents of 1879 was so returned to defendant as to authorize him to issue his warrant, relators' claim to a *mandamus* cannot be sustained, because the case does not present that fact. To obtain a *mandamus,* it must plainly appear that defendant has omitted a manifest duty. Under the construction we feel compelled to give to the charter, defendant's duty to issue warrants does not arise until a return of the delinquents has been duly made to him

by the proper officer. Unless that appears, no duty is shown to have been omitted.

The rule to show cause must therefore be discharged, with costs.